IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | |
|---|---|
| CONNIE S. COLLINS, IN HER OWN BEHALF AND AS ADMINISTRATOR OF THE ESTATE OF BRAD D. COLLINS, DECEASED;<br><br>Plaintiff,<br><br>vs.<br><br>EDWARD TATE, HOWARD TRANSPORT, INC, HOWARD INDUSTRIES, INC.,<br><br>Defendants, | 2:17-CV-00318-MJH |

OPINION

This case concerns an accident, involving two tractor-trailers. Plaintiff Connie Collins brings the case on her own behalf and as Administrator of the Estate of Brad D. Collins, deceased ("Collins"), against Defendants Edward Tate ("Tate"), the driver of the second truck, Howard Transportation, Inc. ("Howard Transportation"), Tate's employer, and Howard Industries, Inc. ("Howard Industries"), the owner of Howard Transportation.

Both parties have moved for partial summary judgment. Collins' Motion seeks judgment that: (1) Tate was negligent as a matter of law by failing to adhere to the assured clear distance ahead rule; (2) Tate and Howard Transportation are precluded, as a matter of law, from asserting affirmative defenses of contributory negligence and/or the sudden emergency doctrine; and (3) Howard Transportation is liable, based upon the doctrine of *respondeat superior*, if Tate is found negligent.

Defendants move for partial summary judgment on the following issues: (1) Collins has failed to produce any evidence to support a claim against Defendant, Howard Industries; (2) Defendant Howard Transportation, having admitted agency, is entitled to summary judgment on Collins' direct negligence claims; (3) Collins' alleged comparative negligence is a jury question; and (4) Collins cannot support her claim for lost future earnings.

Upon consideration of Collins' Complaint (ECF No. 1-2); Defendants' Answer and Affirmative Defenses (ECF No. 4); Collins' Motion for Partial Summary Judgment, Brief in Support, Concise Statement of Material Facts, Appendix and Exhibits (ECF Nos. 55-57); Defendants' Brief in Opposition (ECF No. 69); Collins' Reply Brief (ECF No. 79); Defendants' Motion for Partial Summary Judgment, Concise Statement of Material Facts, Appendix, Exhibits, and Brief in Support (ECF Nos. 62-67); Collins' Brief in Opposition (ECF No. 72); Defendant's Reply Brief (ECF No. 77); and for the following reasons, Collins' Motion for Partial Summary Judgment is granted in part and denied in part, and Defendants' Motion for Partial Summary Judgment is granted in part and denied in part.

I.     **FACTUAL BACKGROUND**

**A. The Accident**

On February 17, 2015, at approximately 6:35 a.m., Mr. Collins, driving a semi-truck, with two trailers attached, was travelling west on I-70 in Washington County, Pennsylvania. (ECF No. 57 at ¶ 1). Tate, acting within the course and scope of his employment, was also travelling west on I-70, driving a semi-truck owned by his employer, Howard Transportation. *Id.* at ¶¶ 2-3. Witnesses reported cold weather conditions with snow along the sides of the road, as well as spots covered in snow and ice. (ECF No. 66-2 at pp. 73:21-25, 74:18-23).

While travelling at approximately 58 miles per hour, Mr. Collins approached a slight right curve leading to a bridge, whereupon he encountered ice. (ECF No. 57 at ¶ 4,6, 18). He lost control of the vehicle as he travelled around the curve, causing the truck to strike a concrete barrier. (ECF No. 66 at ¶ 3). After coming to a stop, his tractor partially obstructed the right-hand shoulder, and the trailers blocked both westbound lanes of travel. *Id.* at ¶ 5. The tractor and trailers were situated at the end of the curve in the road and across both westbound lanes of traffic. *Id.* at ¶ 16. Mr. Collins exited the vehicle, purportedly to assess damage and place warning devices. (ECF No. 57 at ¶ 8). However, in the time between his initial accident and the subsequent collision with Tate, Mr. Collins did not move his trailer, activate his emergency flashers, or call 911. (ECF No. 66 at ¶ 16).

In the meantime, Tate was travelling westbound on I-70, at about 66 miles per hour, in the right-hand westbound lane, and behind an SUV. (ECF No. 57 at ¶¶ 2, 4, 9). The SUV driver tapped the brakes and moved to the left-hand lane, and Tate followed suit. *Id.* at ¶¶ 9, 11. The distance, from where Tate could have first seen Mr. Collins's disabled vehicle, was over 600 feet. (ECF No. 66-2 at 43:17-24). As the SUV and Tate vehicles came upon the scene of Mr. Collins's accident, the SUV braked hard, which prompted Tate to apply his brakes as well. (ECF No. 66 at ¶ 8). The SUV veered to the left and into the median, successfully avoiding Collins's vehicle. (ECF No. 57 at ¶ 12; ECF No. 66 at ¶ 10). When the SUV braked hard, Tate switched back into the right-hand lane in order to avoid hitting the SUV. (ECF No. 57 at ¶ 26). Tate then approached Mr. Collins's vehicle, but Tate was not able to stop or avoid impact with Mr. Collins' vehicle. *Id.* at ¶ 10. Tate did not lose control of his vehicle until after it collided with Mr. Collins's vehicle. (ECF No. 57 at ¶ 17). After hitting Mr. Collins' vehicle, Tate's vehicle went through the guardrail and over a steep hill and came to a rest approximately 170 feet below. (ECF No. 66 at ¶ 11).

The Tate collision occurred approximately 60 to 70 seconds after Mr. Collins' initial accident. (ECF No. 66 at ¶ 13). Tate's impact with Collins' vehicle caused Mr. Collins' truck to rotate 90 degrees, whereupon it struck Mr. Collins, who was still outside his vehicle. (ECF No. 57 at ¶ 15). Mr. Collins was thrown into the median by the impact, and he ultimately died as a result of his injuries. (ECF No. 57 at ¶ 16; ECF No. 66 at ¶ 15).

**B. Lost Future Earnings Claim**

Collins' damage claims include a claim for lost future earnings. To calculate damages, Collins utilized economic expert, Dr. David Boyd. Dr. Boyd issued an expert report on October 10, 2018, but later supplied a new, updated report on the day of his deposition, February 12, 2019. (EFC No. 66 at ¶ 32). The October 12, 2018 report purportedly applied an Ohio legal standard, and the February 12, 2019 supplemental report discussed the Pennsylvania "total-offset" method. *Id.* at ¶ 34. In preparing his report, Dr. Boyd did not speak with Connie Collins or with Mr. Collins' employer. *Id.* at ¶ 37.

In his February 12, 2019 report, Dr. Boyd projected Mr. Collins' future earning capacity based upon his potential work-life expectancy. *Id.* at ¶ 42. From that, Dr. Boyd subtracted a "personal consumption" value that included a portion of the food that Mr. Collins would have eaten and his expenditures for clothing. *Id.* at ¶ 46. Dr. Boyd did not deduct housing expenses, because he considered such having a joint consumption value. He did not include entertainment expenses unless those involved something that Mr. Collins would have personally consumed himself. *Id.* Dr. Boyd was not sure if health care costs were included in the "personal consumption" value that he used. *Id.*

**II.    STANDARD OF REVIEW**

4

The standard of review for summary judgment is articulated in Rule 56 of the Federal Rules of Civil Procedure: the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). This mandates that the court grant summary judgment where the nonmoving party fails to sufficiently show an essential element of his or her case, where he or she would have the burden of proof at trial. *Celotex Corp. v. Catrett*, 447 U.S. 317, 322 (1986). The United States Supreme Court has defined a genuine dispute of material fact to mean one where a jury would be able to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Where there is no genuine dispute of material fact, the court should grant summary judgment. When determining whether or not to grant summary judgment, the court must evaluate the evidence in a light most favorable to the nonmoving party. *Watson v. Abington Twp.*, 478 F.3d 144, 147 (3d Cir. 2007).

The court should not weigh evidence or make credibility determinations on a summary judgment ruling, but only determine whether or not the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000). However, the mere existence of a factual dispute will not necessarily defeat a motion for summary judgment. There must be a genuine dispute of material fact, one that would affect the outcome of the case, in order for summary judgment to be denied. *Liberty Lobby*, 477 U.S. at 248.

### III. DISCUSSION

#### A. Collins' Partial Motion for Summary Judgment

##### 1. *Tate's negligence for allegedly violating the assured clear distance ahead rule*

5

Collins argues that Tate was negligent as a matter of law because he violated the assured distance ahead rule. The assured clear distance ahead rule states that "[n]o person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing, nor at a speed greater than will permit the driver to bring his vehicle to a stop within the assured clear distance ahead." 75 Pa. C.S.A. § 3361. In determining whether a driver has violated this rule, Pennsylvania courts have looked to a driver's reasonableness and his speed relative to conditions in a fact-based analysis.

The Pennsylvania Supreme Court has found that a violation of the assured clear distance rule can be negligence as a matter of law. The Court found a driver negligent as a matter of law, when that driver crashed into two vehicles parked side by side in the roadway. *Springer v. Luptowski*, 635 A.2d 134, 136 (Pa. 1992). The court held that a violation of the assured clear distance rule can be deemed negligence as a matter of law when clearly established by the evidence. *Id.* The court found that the evidence clearly established negligence where the expert testified that, at the point where the driver could have first seen the obstruction, he would not have been able to stop. *Id.* It would have taken the driver 376 feet to stop at the rate of speed he was travelling, and the obstructions in the road were 320 feet ahead. *Id.* Likewise, in *Haines v. Dulaney*, the court found that a driver, who drove around a curve and hit a truck that was parked on the highway, was negligent as a matter of law, because that driver operated her vehicle at a speed too fast to stop within her assured clear distance. *Haines v. Dulaney*, 227 A.2d 625, 625-26 (Pa. 1967). The assured clear distance in that case was 30 feet; however, the driver had been travelling at a speed, which required at least 77 feet to stop the vehicle. *Id.* at 627.

However, where the evidence is inconclusive, the focus turns to reasonableness of speed under the conditions of the road. In the case where a driver was injured after running into a garbage

6

truck that was parked in a lane of travel, the Pennsylvania Supreme Court attempted to clarify the assured clear distance rule. *Lockhart v. List*, 665 A.2d 1176 (Pa. 1995). The court reiterated that 'assured' does not mean 'guaranteed,' and that a driver does not have a duty to expect every series of events that could occur on the roadway; rather, the driver must anticipate what would be reasonable. *Id.* at 1179-80. Drivers, though expected to be reasonable, are not expected to be omniscient. *Id.* at fn. 4.

Here, it is not clear whether or not Tate violated the assured clear distance ahead rule. Unlike *Springer* or *Haines*, there is no conclusive record evidence to establish the time it would have taken for Tate to stop his vehicle relative to Mr. Collins's disabled vehicle. *Springer*, 635 A.2d at 136; *Haines*, 227 A.2d at 627. The sight distance, from the first point, where Tate could have seen Mr. Collins's truck, was over 600 feet. According to reconstruction experts, Tate would have had sufficient time to stop within this sight distance. In the *Springer* and *Haines* cases, each drivers' speed, relative to the distance to the obstruction ahead, provided conclusive evidence that each driver would not have been able to stop within said driver's assured clear distance. Collins admits in her motion that sight distance was not an issue in this case. Because of this, the evidence does not conclusively establish that Tate violated the rule as a matter of law.

Collins also argues that Tate admits that he would have hit the SUV in front of him had he not moved back into the right lane. While Tate may have violated the assured clear distance ahead rule if he had hit the SUV in front of him, the record is less clear as to any violation relative to the Mr. Collins' vehicle. The evidence is inconclusive as to whether or not Tate would have been able to stop in time if he had not had to change lanes in response to the SUV's braking. Thus, for Tate's speed, there exists a question of reasonableness of his speed relative to conditions. Further, Tate did not have any obvious warning of any impending obstruction. *Commonwealth v. Hoke*, 298

A.2d 913, 914 (Pa. Super. Ct. 1972) (affirming a driver's violation of the rule because of road conditions that included flashing bus lights and other cars waiting for the clear signal). Collins did not place reflective triangles, turn on his flashers, or call the authorities before the SUV and Tate came upon the scene. And, unlike the driver in *Commonwealth v. Heberling*, Tate was travelling within the marked speed limit. *Commonwealth v. Heberling*, 678 A.2d 794, 795-96 (Pa. Super. Ct. 1996) (Finding a driver's speed unreasonable as she approached a crest of a hill and an intersection). Presently, the evidence establishes that there are questions of fact regarding the reasonableness of Tate's driving and speed, considering the weather and road conditions at the time of the accident. Thus, the evidence does not establish conclusively that Tate violated the assured clear distance rule as a matter of law. Accordingly, Plaintiff's motion for partial summary judgment, as regards the assured clear distance ahead rule, will be denied.

2. ***Contributory negligence and/or the sudden emergency doctrine defenses asserted by Tate and Howard Transportation***

      i.      <u>The Contributory Negligence Defense</u>

Collins argues that Defendants are precluded from asserting the defense of contributory negligence, because Mr. Collins was not negligent. For the Court to find that Mr. Collins was not contributorily negligent as a matter of law, there must be no factual question as to whether Mr. Collins' conduct actually contributed to the accident. *Ulmer v. Hamilton*, 119 A.2d 266, 268 (Pa. 1956).

Collins contends that Mr. Collins' initial loss of control of his vehicle was too attenuated for contributory negligence to apply. *Sullivan v. Wolson*, 396 A.2d 1230 (Pa. Super. 1978). *In Sullivan*, the defendant struck plaintiff who was standing between stopped vehicles on an icy road after a rear end collision between plaintiff's vehicle and another vehicle. *Id.* The court found that,

8

in a series of automobile accidents occurring within minutes of one another, the circumstances of the initial accident were not enough to demonstrate negligence for the subsequent events. *Id.* at 1233. In determining cause, the Superior Court looked to "(1) the number and extent of other forces contributing to the harm, (2) the lapse of time from the conduct to the harm, and (3) whether the conduct creates a force in operation up to the time of the harm, or simply creates a harmless situation which is acted upon by other forces for which the actor is not responsible." *Id.* at 1234. In *Sullivan*, the court held that the driver, who exited his vehicle in order to give certain information to other involved driver was fulfilling his duty under the law, such that his exit from the vehicle was not negligence. *Id.* at 1234.

Presently, unlike *Sullivan*, Mr.Collins's truck blocked both lanes of highway traffic, creating a potential danger to other motorists. *See also Springer*, 635 A.2d at 136 (holding that drivers parked in both lanes of traffic were contributorily negligent in a traffic accident). This was not a harmless situation, but one that created a continuing danger to other motorists. Also, while in *Sullivan* there was no question that one of the drivers was getting out of the vehicle to perform a statutory obligation of providing information to other drivers, Defendants contest Collins' claim that Mr. Collins had exited his vehicle to perform a similar duty, while Collins' argues that Mr. Collins had exited the truck to assess damage. However, Defendants respond that video evidence does not support Collins' position. Thus, the evidence establishes a jury question as to Mr. Collins' contributory negligence. As such, Collins' motion for partial summary judgment, as regards contributory negligence, will be denied.

ii. The Sudden Emergency Doctrine

Collins argues that Tate should be precluded from relying on the sudden emergency doctrine. Pennsylvania Courts have analyzed the sudden emergency doctrine as available to an

individual, (1) who suddenly and unexpectedly finds himself confronted with a perilous situation, (2) that permits no opportunity to assess the danger, (3) if he responds appropriately, and (4) proves that he did not create the emergency. *Drew v. Work*, 95 A.3d 324, 334-35 (Pa. Super. Ct. 2014). The Superior Court noted that these are issues generally resolved by jury. *Id.*

Collins argues that Defendants cannot use this defense because Tate created the emergency by violating the assured clear distance ahead rule. *Haines*, 227 A.2d at 627. Likewise, Collins argues that, because the sudden emergency doctrine is generally applied to moving objects, Mr. Collins' stationary, disabled truck did not constitute an emergency. *Cunningham v. Byers*, 732 A.2d 655 (Pa. Super. Ct. 1999). *See also Sullivan*, 396 A.2d at 1236 (finding error in the application of the sudden emergency doctrine to icy roads and stopped cars because they constituted a pre-existing condition). Collins focuses solely on the static truck, but Tate argues about the sudden hard breaking of the SUV in front of him. Further, there is also an issue concerning the duty to reasonably anticipate the presence of an obstacle blocking both lanes of the roadway. Given the constellation of many circumstances involved in the present accident, no one circumstance, in isolation, resolves the factual issues necessary to decide the applicability of the sudden emergency doctrine. Therefore, a jury question exists as to which, if any, circumstances constituted the sudden emergency. Accordingly, Collins' motion for summary judgment, as regards the sudden emergency doctrine, is denied.

      iii.    *Potential Liability of Howard Transportation*

As regards the liability of Howard Transporation, Collins argues that, if Tate is found negligent, Howard Transportation is liable to Collins, based upon *respondeat superior*. An employer is liable for the act of its employee when those acts are committed during the course of his employment and within the scope of his authority under the doctrine of *respondeat superior*.

*Valles v. Albert Einstein Med. Ctr.*, 805 A.2d 1232, 1237 (Pa. 2002) (citing *Lunn v. Boyd*, 169 A.2d 103 (Pa. 1961)). Defendants do not challenge that Tate was an employee of Howard Transportation or that he was acting within the scope and course of his employment when the accident occurred. Because of this, if Tate is found negligent, Howard Transportation will be vicariously liable. Accordingly, Collins' motion for summary judgment, as regards Howard Transportation's vicarious liability, relative to any negligence found against Tate, will be granted.

### B. Defendant's Motion for Partial Summary Judgment

#### 1. *Claims against Howard Industries*

In Collins' Brief in Opposition, she concedes that Howard Industries is not a necessary party in her case against Howard Transportation, Inc. and Edward Tate. Accordingly, Defendant's Motion for Summary Judgment, as regards Howard Industries, will be granted. Howard Industries, Inc. will be dismissed as a party.

#### 2. *Collins' direct negligence claims as to Defendant, Howard Transportation*

Defendants argue that any direct negligence claim against Howard Transportation is unnecessary and redundant because the company's vicarious liability, relevant to any negligence of Tate, is uncontested. Collins argues that there may be testimony at trial that would support a direct negligence claim. In *Sterner v. Titus Transportation*, a case involving an accident where one tractor trailer hit another, the Middle District of Pennsylvania stated that, "a plaintiff cannot pursue a claim against an employer for negligent entrustment, hiring, supervision, or training when the employer admits that its employee was acting within the scope of employment when the accident occurred." *Sterner v. Titus Transportation*, 2013 WL 6506591, at *4 (M.D. Pa. 2013) (quoting *Peterson v. Johnson*, No. 11 CV804, 2013 WL 5408532 at *1 (D. Utah Sept. 25, 2013)). Pennsylvania District Courts have held that where an employer admits vicarious liability, direct negligence claims against the employer are generally dismissed. *See Sterner*, 2013 WL 6506591,

11

at *4 (M.D. Pa. 2013); *Calhoun v. Van Loon*, 2014 WL 3428876 at *4 (M.D. Pa. Oct. 27, 2016) (noting that federal district courts in Pennsylvania have nearly unanimously applied the standard set forth in *Sterner*); *Testa v. Senn Freight Lines, Inc.*, 2016 WL 465459 (E.D. Pa. Dec. 12, 2013) (granting summary judgment on the claim of negligent hiring, training, supervision or retention of a tractor-trailer employer because it "becomes unnecessary, irrelevant, and prejudicial if the employer has already admitted vicarious liability under *respondeat superior*."); *Allen v. Fletcher*, 2009 WL 1542767 (M.D. Pa. 2009) (granting summary judgment for a claim of negligent hiring on part of a tractor-trailer employer, because "[a]s a general rule, courts have dismissed claims for negligent supervision and negligent hiring when a supervisor defendant concedes an agency relationship with the codefendant . . ."); *Holben v. Midwest Emery Freight System, Inc.*, 525 F. Supp. 1224, 1224-1225 (W.D. Pa. 1981) (Holding that with a negligence claim against a trucking company, "[n]othing can be gained from when the defendant employer has admitted the agency of the driver, and to permit the action to proceed . . . would allow the introduction of evidence of prior accidents of the driver, highly prejudicial, irrelevant and inadmissible . . .."). Further, a Plaintiff may not bring a direct negligence claim, against an employer, where Plaintiff does not have a viable claim for punitive damages against the supervisor/employer defendant. *Sterner*, 2013 WL 6506591, at *4 (M.D. Pa. 2013). Collins has not claimed punitive damages; and therefore, she may not pursue a direct negligence claim against Howard Transportation.

Finally, even if Collins could bring a direct negligence claim against Howard Transportation, she fails to provide any evidence to support said claim. While Collins argues that during discovery there was additional information uncovered that Howard Transportation was negligent in its training, education, and use of industry standards, Collins has produced no evidence to support a finding of direct negligence against Howard Transportation. Howard Transportation

12

did not provide specific training for seeing, recognizing, and reacting to hazards, or specific instructions or guidelines for winter weather driving or driving in icy conditions. (ECF No. 66-5 at pp. 69:12-17, 71:3-16). However, the Defendant did require its employees to view quarterly training/safety videos on topics like winter driving, driving near schools, following distances, and more. *Id.* at p. 85:2-25. Collins presents no evidence of any industry standards, requiring training relevant to this accident or that has any causal relationship to this accident. Accordingly, Defendants' motion for summary judgment, as regards direct negligence claims against Howard Transportation, is granted. Said claims will be dismissed.

### 3. *Plaintiff's evidence of lost future earnings claims*

Defendants first argue that Collins failed to conform with the Federal Rules of Civil Procedure, because a corrected lost future earnings report, that applied Pennsylvania's total offset method, was not given to Defendants until the date of Collins' expert's deposition, which was months after the set deadline for submission of Collins' expert report. *See Kaczkowski v. Boulbasz*, 421 A.2d 1027, 1038-39 (Pa. 1980) (adopting and outlining the total offset method of calculating lost future earnings); Fed. R. Civ. P. 26. Defendants argue that the Collins' expert should not be able to testify based on his initial report, because it does not comply with the total offset method. And, Defendants argue that Collins' expert's new report is not permissible, because it was untimely, caused unfair surprise, and/or prejudices the defense.

As applied in *Altman v. Ingersoll-Rand, Co.* the Third Circuit factors, for determining when to exclude testimony, are: "(1) the prejudice or surprise in fact of the party against whom the excluded witness would have testified; (2) the ability of that party to cure the prejudice; (3) the extent which waiver of the rule against calling unlisted witnesses would disrupt the trial of the case; and (4) bad faith or willfulness in failing to comply with the [] court's order." *Altman v.*

13

*Ingersoll-Rand, Co.*, 2008 U.S. Dist. LEXIS 16696, at *16 (citing *DeMarines v. KLM Royal Dutch Airlines*, 580 F.2d 1193, 1201-02 (3d Cir. 1978)). According to the *Altman* case, "[i]f a trial court finds prejudice or surprise, the court must determine whether it is curable." *Id.* (citing *Bowersfield v. Suzuki Motor Corp.*, 151 F. Supp. 2d 635, 632 (E.D.Pa. 2001)). Further, "'testimony of an expert on matters within the expert's expertise but outside of the expert's report is not only permissible at trial, but the exclusion of such testimony may be reversible error. . . .. An expert may testify beyond the scope of his report absent surprise or bad faith.'" *Id.* (citing *Bowersfield*, 151 F. Supp. 2d at 631). *See also, Kelly v. GAF Corp.*, 115 F.R.D. 257, 258 (E.D.Pa. 1987) ("There is no local custom, practice, or rule which limits an expert's testimony to the strict confines of the expert report."). Thus, the first question for this Court is whether Collins' second expert report was prejudicial to the defense.

Here, Defendants do not present evidence that second expert report was an unfair surprise or prejudicial in any way. Defendants knew the identity of the expert witness, were provided with the second report, and were able to question the witness specifically about the report. Also, Defendants do not allege any suspicious activity, attributable to Collins or her expert, that suggests any bad faith or willful noncompliance with this court's orders. In his first report, the expert applied the wrong standard; and, once the error was realized, the second report was prepared. The late submission of the second expert report, in this case, does not provide sufficient basis to exclude the same. Further, Defendants proceeded with the deposition, and did not ask for any extension of expert discovery in response to the Collins' second expert report. Thus, the record does not support a finding of prejudice to the defense.

Beyond the above arguments concerning timeliness and prejudice, Defendants next argue that the second expert report is not relevant because it is limited to work-life expectancy, rather

than life expectancy. Defendants' argument is not correct. The standard as applied by Pennsylvania courts, is work-life expectancy, thus Collins' second expert report is proper. *See Kaczkowski*, 421 A.2d at 1029 n.6. *See also Golden Gate Nat'l Senior Care, LLC v. Beavens*, 123 F. Supp.3d 619, 633 (E.D. Pa. 2015) (Quoting *Kiser v. Schulte*, 648 A.2d 1, 4 (Pa. 1994)) (Stating that, "[t]he measure of damages awarded in a survival action include. . . the loss of his earning power—less personal maintenance expenses, from the time of death through his estimated ***working lifespan***); *Incollingo v. Ewing*, 282 A.2d 206, 229 (Pa. 1971) (holding that damages are properly measured in the timeframe of the time of death through decedent's estimated ***working lifespan***); *DeJesus v. United States VA*, No. 02-0253, 2005 U.S. Dist. LEXIS 19282, at *21 (E.D. Pa. Sept. 6, 2005) (citing the *Incollingo* standard for measuring damages, that "economic damages are properly measured by the loss of earning power less personal maintenance expenses from the time of death through a decedent's estimated ***working lifespan***")(emphasis added). Accordingly, defense challenge to Collins' second report and work life expectancy lacks merit.

Defendants also argue that, because Collins' expert did not apply the appropriate Pennsylvania factors to determine lost future earnings, and because Collins did not present documentation of Mr. Collins' personal maintenance expenses during discovery, the jury cannot reasonably estimate damages under Pennsylvania law. Pennsylvania law has recognized that when calculating damages for lost future earnings, a "personal maintenance" expense must be deducted from the future earnings. *See Murray v. Philadelphia Transp. Co.*, 58 A.2d 323 (Pa. 1948). *See also Obioba v. Gupta*, 2018 WL 1904755 at * (Pa. Super. Ct. April 23, 2018) (upholding the deduction of personal maintenance expenses in the calculation of future lost earnings); *Kornberger v. Lehigh Valley Health Network, Inc.*, NO. 2014-C-1508, 2016 Pa. Dist. & Cnty. Dec. LEXIS 1213, at *55 (C.P. 30, 2016) (granting defendant's motion *in limine* precluding plaintiff's

15

economist from providing opinion and testimony on economic damages without taking into account the deduction of personal maintenance). Defendants argue that the standard, as established set forth by the Pennsylvania Supreme Court in *McClinton*, requires specific factors be included for deduction from future earnings calculations. *McClinton* provided, "that necessary and economical sum which a decedent would be expected to spend, based upon his station in life, for ***food, clothing, shelter, medical attention and some recreation***." *McClinton v. White*, 444 A.2d 85 (Pa. 1982) (emphasis added). The *McClinton* Court found that a calculation of "personal maintenance" and "personal absence" was satisfactory for a lost future earnings analysis. *Id*. at 88. Since *McClinton*, Pennsylvania courts have considered these factors as standards for future earnings calculations. In *Rettger v. UPMC Shadyside*, an expert applied more factors "food, housing, clothing, transportation, healthcare, personal care products and services, reading, education and some entertainment," than those set out in *McClinton*. *Rettger v. UPMC Shadyside*, No. 614 WDA 2012, 2013 WL 11250960 at *6 (Pa. Super Ct. 2012). The Pennsylvania Superior Court held that the trial court did not abuse its discretion when it precluded the expert's testimony, as inconsistent with McClinton.

However, courts have not applied these factors with mathematical certainty. In *Borman v. Raymark Industries,* the only evidence of a decedent's personal maintenance expenses was testimony from his wife. *Borman v. Raymark Indus., Inc.*, 960 F.2d 327, 335–36 (3d Cir. 1992). When asked to give the jury an approximation of the expenses, the wife answered that he would spend $20 to $25 a week on whatever he wanted. *Id*. The defendant in that case argued that the lack of information invited speculation and moved that the wage loss claim be precluded. *Id*. The Third Circuit, citing the *McClinton* factors, affirmed the lower court's decision to allow the lost

earnings claim. *Id.* While observing that the evidence in that case was sparse, it was more concrete than *McClinton*, and it was sufficient. *Id.*

The Pennsylvania Supreme Court has also explained that damages need not be calculated to mathematical exactness; and, while mere speculation is not enough, a reasonable basis for a calculation will be sufficient. *Kaczkowski v. Bolubasz*, 421 A.2d at 1030 (Pa.1980) (citing *Lach. v. Fleth*, 64 A.2d 821 (Pa. 1949) and *Stevenson v. Economy Bank of Ambridge*, 197 A.2d 721, 727 (Pa. 1964)). Furthermore, in discussing the calculation of an individual's potential earning power, the court in *Small v. Flock*, opined that specificity and ease are not necessary, and held that "[j]ustice is not to be denied in any case because proof is difficult." *Small v. Flock*, 180 A.2d 59, 62 (Pa. 1962). These cited cases demonstrate that Pennsylvania courts have consistently held that, where a reasonable calculation of damages can be made, there is a valid claim.

Presently, the Collins' expert has calculated a value for food and clothing expenses. (ECF No. 66 at ¶ 46). Other testimony may be admitted during the course of trial to further define expenses. Thus, as this stage, the evidence of record, including Collins' second expert report, give rise to a question of fact, which belongs to the jury for decision. Accordingly, Defendants' motion for summary judgment, as regards to Collins' lost future earnings claim, will be denied.

## IV. CONCLUSION

As discussed above, following consideration of Collins' partial motions for summary judgment, the same will be granted in part and denied in part. Further, following consideration of Defendants' partial motions for summary judgment, the same will be granted in part and denied in part. In accordance with the above discussion, an appropriate order will follow.

_____
Marilyn J. Horan
United States District Judge